**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | 09-261-1 |
| | : | |
| DEE LYNN ANDREWS | : | CIVIL ACTION |
| | : | 13-6205 |

April _15__, 2014                                                                                           Anita B. Brody, J.

<u>**MEMORANDUM**</u>

Currently before me is Dee Lynn Andrews' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. For the reasons set forth below, I will deny Andrews' § 2255 motion.

**I. BACKGROUND[1]**

On April 1, 2009, the grand jury returned an indictment charging Andrews with three counts of mail fraud, in violation of 18 U.S.C. §§ 1341, 1349, and three counts of wire fraud, in violation of 18 U.S.C. §§ 1343, 1349. According to the indictment, Andrews settled a Fen-Phen lawsuit with Wyeth, the drug manufacturer, for approximately $200,000, and promised not to sue Wyeth for any claim arising out of her purchase, use, or ingestion of Fen-Phen. However, Andrews subsequently filed multiple claims against Wyeth to recover for the same Fen-Phen injuries for which she had already received compensation.

Rather than proceed to trial, Andrews decided to plead guilty pursuant to a written plea agreement. The plea agreement provided that Andrews would "voluntarily and expressly waive[] the right to appeal or collaterally attack [her] conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or attack arises under 18 U.S.C. §

---

[1] The facts are taken from the record developed prior to the filing of the instant motion; the exhibits attached to the petition; and the affidavit provided by Andrews' trial counsel in response to claims that counsel rendered ineffective assistance of counsel.

1

3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law." Guilty Plea Agrmt. ¶ 9. The following limited exceptions applied to Andrews' waiver of her right to appeal or collaterally attack her conviction or sentence:

> a. Notwithstanding the waiver provision above, if the government appeals from the sentence, then the defendant may file a direct appeal of her sentence.
>
> b. If the government does not appeal, then notwithstanding the waiver provision set forth in this paragraph, the defendant may file a direct appeal but may raise only claims that:
> (1) the defendant's sentence on any count of conviction exceeds the statutory maximum for that count as set forth in paragraph 3 above;
> (2) the sentencing judge erroneously departed upward pursuant to the Sentencing Guidelines;
> (3) the sentencing judge, exercising the Court's discretion pursuant to *United States v. Booker*, 543 U.S. 220 (2005), imposed an unreasonable sentence above the final Sentencing Guideline range determined by the Court; and/or
> (4) the district court decided adversely to the defendant the following issue: the motion in limine to exclude certain defense psychological evidence.
>
> If the defendant does appeal pursuant to this paragraph, no issue may be presented by the defendant on appeal other than those described in this paragraph.

*Id.*

In February 2012, Andrews' counsel sent Andrews a copy of the plea agreement to read and then reviewed the agreement with her over the phone. In reviewing the waiver section of the plea agreement, counsel informed Andrews that, if she signed the plea agreement and pled guilty, "the only way she could 'appeal' or 'complain' about her sentence was based on the reasons listed in the [waiver] paragraph." Trial Counsel Aff. 2 ¶ 4. Counsel explained to Andrews the limited exceptions to her waiver of her right to appeal or collaterally attack her conviction or sentence. *Id.* Andrews signed the plea agreement after reviewing it with counsel.

On April 26, 2012, the Court held a change of plea hearing. In the beginning of the hearing, the Government described the waiver agreement to Andrews and the Court. Afterward, the Court explained the waiver provision to Andrews. Specifically, the Court explained to

Andrews that, with very limited exceptions, she was "giv[ing] up all [her] rights to appeal or complain to anyone . . . ." Tr. 4-26-12 at 24:18-19. The Court reiterated to Andrews that she was "giv[ing] up the right to appeal any – file any appeal in this case for any challenge, such as a habeas corpus motion, to vacate, set aside, or correct [her] sentence." *Id.* at 25:11-13. The Court further emphasized to Andrews that "[i]f the Government does not appeal, then you may not appeal or present any later challenge claiming error to this guilty plea proceeding, the sentencing, or any other aspect of this case, with three – and in your case four narrow exceptions." *Id.* at 25:19-23. The Court then explained each narrow exception to the waiver provision to Andrews. After each time the Court explained the waiver provision, Andrews confirmed that she understood the limitations on her right to appeal or collaterally challenge her conviction and sentence. *Id.* at 24-26. At the end of the change of plea hearing, Andrews pled guilty to all counts in the indictment, pursuant to the written plea agreement.

Prior to sentencing, the probation office prepared a Presentence Investigation Report ("PSR") and defense counsel submitted a sentencing memorandum. The PSR explained that all of Andrews' teeth had been removed for medical reasons in 2009. PSR ¶ 128. Additionally, it stated that on October 10, 2012, Andrews had begun a lengthy oral surgery treatment plan to repair the bones in her face and naval cavity in order to enable the implantation of permanent teeth. Defense counsel argued in the sentencing memorandum that Andrews' oral condition warranted a downward departure or variance from the sentencing guidelines range. The sentencing memorandum included several documents from Andrews' surgical team recording her progress and explaining the procedure.

The PSR also provided a detailed review of Andrews' mental health problems and summarized the findings of a forensic psychiatric assessment and a neurological evaluation of

Andrews. PSR ¶¶ 131-39. Defense counsel included both the complete forensic psychiatric assessment and the neurological evaluation as exhibits to the sentencing memorandum. Defense counsel explained in the memo that Andrews had been receiving treatment from the state of Arizona since 2003 when she was given Seriously Mental Ill ("SMI") status. Andrews had a case manager, a therapist, and a psychiatrist. From 2003 until 2007, a supportive team was assigned to Andrews to stabilize her condition. In 2007, Andrews had stabilized enough to be stepped down from the supportive team to a connective team. Counsel explained that since 2007, Andrews has been stable. Counsel argued that incarceration would interrupt the SMI services Andrews received and negatively affect her stability. A video interview of Rebecca Dobbs, Andrews' case manager, was submitted as an exhibit to support counsel's argument.

On January 7, 2013, the Court held Andrews' sentencing hearing. At sentencing, defense counsel argued for a downward departure or variance to the guidelines range based on Andrews' oral health. Defense counsel explained that Andrews was in the middle of oral surgery and that "[s]he currently has no teeth, . . . she has meshes that have been implanted, and once they heal, they then have to go back and put temporary crowns on, and then they have to wait for the bone to heal even more, and then they have to put the actual teeth in." Tr. 1-7-13 at 32:2-6. Defense counsel estimated it would take another year to complete the procedure based on the letter from the dental student that was submitted with the sentencing memo. Defense counsel argued that Andrews' oral condition supported a non-custodial sentence because "if [Andrews] were to go into the BOP, the oral surgery would have been for nought because it wouldn't be completed within the BOP . . . ." *Id.* at 33:15-17. The Court pointed out that Andrews "knew all this when she commenced [the surgery]." *Id.* at 33:20-21. Additionally, without evidence the Court could not "assume that the surgery would be for nought." *Id.* at 34:19-22.

Counsel also argued for a non-custodial sentence based on Andrews' post-offense rehabilitation. Specifically, counsel emphasized how the services provided by the State of Arizona had stabilized Andrews and that SMI services continued to keep her stable. Counsel never argued to the Court that incarceration would render Andrews ineligible for SMI services upon her release from prison because counsel "believed that Ms. Andrews would be able to receive her benefits again upon release from any sentence of incarceration." Trial Counsel Aff. P. 3 ¶ 7. Trial counsel based this belief on her interview with Rebecca Dobbs, Andrews' case manager, who had informed trial counsel that Andrews would be able to receive the same services upon her release from prison.[2]

The Court acknowledged Andrews' significant post-offense rehabilitation and that Andrews was in the middle of oral surgery. However, the Court also explained that Andrews "us[ed] the auspices of the Court and then turn[ed] around and defraud[ed] the Court, and that is very, very serious, very serious. And then [she] compounded that felony by testifying dishonestly on – on deposition under oath." *Id.* at 55:3-7. The Court balanced Andrews' personal needs with the need for deterrence and adequate punishment:

> As far as yourself is concerned, that's the problem I have with this case is that I don't want to send you out after time in prison worse than you are now, but that's the balance I have to – I have to weigh, and I have come down believing that you must be – that there must be a period of incarceration.

*Id.* at 56:3-8. The Court sentenced Andrews to one year and one day of imprisonment, three years of supervised release, a $3,000 fine, and a $600 special assessment. Taking into consideration Andrews' oral health, the Court ordered Andrews to begin her sentence on May 25, 2013. When it became apparent in May 2013 that Andrews' oral treatment was nowhere

---

[2] Trial counsel video recorded this interview and has submitted the recording as an attachment to the affidavit.

near complete, the Court granted Andrews' unopposed request to delay the start date of her sentence until February 25, 2014.

On October 15, 2013, Andrews filed her motion for habeas corpus relief pursuant to 28 U.S.C. § 2255. Andrews attached several exhibits to her petition.

One exhibit is a letter from Robert D. Carpenter, a Doctor of Dental Medicine responsible for supervising Andrews' oral surgeries. Carpenter provides a progress report on Andrews' oral surgeries and estimates that the surgeries will be completed by mid-to-late 2014. Additionally, he opines that the consequences of delaying the oral surgeries during Andrews' incarceration are unknown.

Another exhibit is a letter from Rebecca Dobbs, Andrews' SMI case manager. Dobbs explains that if Andrews is incarcerated for more than one year, she will be required to reapply for SMI services because state regulations require any person who does not receive services for more than one year to reapply. Additionally, Dobbs explains that Andrews will experience a significant lapse in services during the reapplication process.

A third exhibit is a report prepared by Phillip S. Wise, a consultant and retired Assistant Director of the Federal Bureau of Prisons who was responsible for health care for the agency. Wise recognizes that despite Andrews' sentence of one year and one day she will be incarcerated for "approximately 10 months." Pet.'s Ex. F at 5. Wise explains that "[w]hile the Bureau of Prisons seeks to provide medically necessary care for its inmates, it may decline to provide all medically appropriate care." *Id.* Wise hypothesizes that it is unlikely the BOP will continue Andrews' oral surgeries or provide all of the same medications to Andrews because these treatments will not be deemed medically necessary. Wise also hypothesizes that the BOP will

6

likely continue to manage Andrews' bipolar disorder with lithium carbonate and medically monitor Andrews.

On January 23, 2014, the Court entered a stipulated order extending the date for Andrews to begin her sentence until April 17, 2014.[3]

## II.  STANDARD OF REVIEW

Section 2255 empowers a court to "vacate, set aside or correct" a sentence that "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). If a party is entitled to relief under § 2255(a), "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.* § 2255(b). A petitioner is entitled to an evidentiary hearing unless the motion, files, and records of the case show conclusively that the petitioner is not entitled to relief.[4] *Id.*

## III.  DISCUSSION

Andrews brings two claims that her trial counsel was constitutionally ineffective for failing to adequately investigate or inform the Court that incarceration would: (1) render Andrews ineligible to receive mental health services from Arizona upon her release from prison; and (2) interrupt Andrews' oral surgeries and negatively impact her oral health. Additionally, Andrews brings the following two anticipatory Eight Amendment violation claims on account of the predictions that: (1) the Bureau of Prisons ("BOP") will not continue Andrews' oral surgeries and will fail to manage Andrews' mental health; and (2) incarceration will cause Andrews to experience a lapse in state provided mental health services upon her release. The Government

---

[3] In the stipulated order, the Court also directed trial counsel to file an affidavit addressing Andrews' claims that counsel provided ineffective assistance of counsel.

[4] Andrews is not entitled to an evidentiary hearing because the motion, exhibits, and records conclusively establish that her claims are not meritorious.

7

argues that Andrews cannot bring these claims because she waived the right to collateral review in her plea agreement.

A collateral review waiver is enforceable if: (1) the claims the defendant raises on collateral review fall within the scope of the waiver and (2) the defendant knowingly and voluntarily agreed to the waiver, unless (3) enforcing the waiver would result in a miscarriage of justice. *United States v. Grimes*, 739 F.3d 125, 128-29 (3d Cir. 2014); *United States v. Mabry*, 536 F.3d 231, 237 (3d Cir. 2008). "Whereas a defendant bears the burden of presenting an argument that would render his waiver unknowing or involuntary, a court has an affirmative duty both to examine the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice, based on the record evidence before it." *Mabry*, 536 F.3d at 237-38.

Andrews acknowledges that the claims for which she seeks review fall within the scope of the waiver. However, she argues that the waiver is unenforceable. First, Andrews argues that the waiver is unenforceable as to all claims because trial counsel failed to explain to her the meaning of the term "collaterally attacking" her sentence; thus, she did not knowingly agree to the waiver.[5] Second, she argues that even if she knowingly and voluntarily agreed to the waiver, a miscarriage of justice would result if the Court enforces the waiver as to her ineffective assistance of counsel claims.

Andrews contends that her waiver was not knowing and voluntary because trial counsel failed to explain to her the meaning of the term "collaterally attacking" her sentence. The plea

---

[5] Andrews also argues that the waiver of her Eight Amendment claims was not knowing and voluntary because she did not know at the time she pled guilty how her sentence would be carried out. However, whether a waiver is voluntary and knowing turns on whether Andrews knew and voluntarily agreed to waive her rights to collaterally attack her sentence, not whether she knew how her sentence would be carried out. Of course, no defendant knows how his/her sentence will be carried out at the time s/he agrees to a waiver because sentencing has not yet occurred.

agreement clearly provides that the waiver applies to Andrews' collateral challenge rights. Before Andrews signed the agreement, counsel explained to Andrews that if she pled guilty she would be giving up her right to "complain" about her sentence unless one of the limited exceptions to the waiver applied. The clarity of the waiver, counsel's explanation of the waiver to Andrews, and Andrews' signature on the agreement all point to the conclusion that the waiver was knowing and voluntary. *See Mabry*, 536 F.3d at 238. "The colloquy similarly countermands any suggestion that the waiver was not knowing and voluntary." *Id.* at 239.

"In determining whether a waiver of appeal is 'knowing and voluntary,' the role of the sentencing judge is critical." *United States v. Khattak*, 273 F.3d 557, 563 (3d Cir. 2001). Under the Federal Rules of Criminal Procedure:

> Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence.

Fed. R. Crim. P. 11(b). If the district court explains the waiver to the defendant and confirms that the defendant understands the waiver in the Rule 11 colloquy then the defendant has knowingly and voluntarily agreed to the waiver. *Marbry*, 536 F.3d at 239; *Khattak*, 273 F.3d at 563. Even if counsel provides an incomplete or improper explanation of the waiver, the defendant's waiver is knowing and voluntary if the district court fully and properly explained the waiver to the defendant during the Rule 11 colloquy and the plea agreement correctly described the waiver. *United States v. Deluca*, No. 08-108, 2012 WL 5902555, at *5 (E.D. Pa. Nov. 26, 2012); *cf. United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007) ("[A]n erroneous sentencing prediction by counsel is not ineffective assistance of counsel where, as here, an adequate plea hearing was conducted.").

9

During the change of plea hearing, the prosecution and the Court reviewed the details of the waiver with Andrews.  Additionally, the Court explained the collateral attack waiver in plain English to make sure that Andrews understood the rights she was waiving.  Specifically, the Court explained to Andrews that she was giving up her right "to complain to anyone."  Tr. 4-26-12 at 24:18-19.  Additionally the Court told Andrews that "[i]f the Government does not appeal, then you may not appeal or present any later challenge claiming error to this guilty plea proceeding, the sentencing, or any other aspect of this case, with three – and in your case four narrow exceptions."  *Id.* at 25:19-23.  Andrews repeatedly stated that she understood the Court's explanation of the collateral attack waiver.  The plea agreement clearly contained a collateral attack waiver that the Court fully explained to Andrews during the Rule 11 colloquy.  Andrews confirmed that she understood the waiver at the change of plea hearing.  Both counsel and the Court explained to Andrews that her collateral attack waiver meant that she could not complain about her sentence at a later date.  Thus, Andrews knowingly and voluntarily waived her right to collaterally attack her sentence.

Therefore, the collateral attack waiver is enforceable unless it would result in a miscarriage of justice.  A court considers the following factors to determine whether enforcing a waiver works a miscarriage of justice: "The clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result."  *Grimes*, 739 F.3d at 130 (internal quotation marks omitted).  Rarely will a waiver result in a miscarriage of justice:

> To qualify as a miscarriage of justice, it is not enough that an issue is meritorious; after all, appellate waivers are intended to preclude review not just of frivolous questions, but of difficult and debatable legal issues we would otherwise consider.

> Rather, the miscarriage of justice exception to appellate waivers applies only in unusual circumstances with the aim of avoiding manifest injustice.

*Id.* (citation omitted) (internal quotation marks omitted).  However, the Third Circuit has acknowledged, without deciding the issue, the argument that waivers are invalid "if they do not carve out claims of ineffective assistance concerning the same attorney who counseled the plea." *Id.* (internal quotation marks omitted).[6]

Andrews seeks to raise two claims that her incarceration will result in violation of the Eight Amendment's prohibition on cruel and unusual punishment.  Andrews claims that the Eight Amendment will be violated based on her predictions that: 1) the BOP will not continue her oral surgeries and will fail to manage her mental health; and (2) incarceration will cause her to experience a lapse in state provided mental health services upon her release.  However, Andrews has not put forth evidence that the BOP will fail to manage her mental health.  Andrews' expert, Phillip Wise, surmised that the BOP will continue to treat Andrews' bipolar disorder, but will likely not continue Andrews' oral surgeries or medications that it deems are not medically necessary.  Additionally, Andrews has not put forth evidence that a delay in her oral surgeries would amount to cruel and unusual punishment.  According to Andrews' dentist, Robert Carpenter, the consequences of delaying the oral surgeries during Andrews' incarceration are unknown.  Moreover, Andrews has not established that a lapse in state mental health services will occur.  Although Andrews will have to reapply for SMI services if she does not receive any services for more than a year, Wise estimates that Andrews will only serve approximately ten

---

[6] In doing so, the Third Circuit acknowledged the ethical concerns raised by the National Association of Criminal Defense Lawyers and at least eight states' legal ethics arbiters, such as defense counsel's "ethical and constitutional duty to object to and refuse to sign any plea agreement provision that amounts to a waiver of post-conviction remedies.  This protects the rights of the client to later challenge the representation of the lawyer." *Grimes*, 739 F.3d at 130 n.3 (internal quotation marks omitted).

months of her sentence in prison.[7]  Moreover, even if this lapse were to occur it would be caused by the State of Arizona, an independent sovereign, and would not render Andrews' federal sentence cruel and unusual.  Enforcing the collateral waiver of these claims will not result in a miscarriage of justice given the very questionable nature of Andrews' anticipatory Eighth Amendment claims, and the fact that Andrews will have the opportunity for civil redress if the BOP actually denies her medical care in violation of the Eighth Amendment.   Therefore, I will enforce Andrews' collateral attack waiver as to her Eighth Amendment claims.

As for Andrews ineffective assistance of counsel claims, it is unnecessary to resolve whether waiver of these claims will result in a miscarriage of justice because they clearly fail on the merits.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established the legal framework for determining Sixth Amendment claims of ineffective assistance of counsel. *Strickland* sets forth a two-part test for claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687.  "Under *Strickland*'s first prong, a court must determine whether, in light of all the circumstances, the identified acts or omissions of counsel were outside the range of professionally competent assistance."  *Grant v. Lockett*, 709 F.3d 224, 234 (3d Cir. 2013).  A

---

[7] Andrews will serve less than a year and one day in prison if she obtains good time credit:

> [A] prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, beyond the time served, of up to 54 days at the end of each year of the prisoner's term of imprisonment, beginning at the end of the first year of the term, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations.

18 U.S.C. § 3624(b).

court's evaluation of an attorney's performance must be "highly deferential." *Strickland*, 466 U.S. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). The second prong of *Strickland*, prejudice, requires a petitioner to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

    First, Andrews argues that trial counsel provided ineffective assistance of counsel by failing to adequately investigate or inform the Court that Andrews' incarceration for more than one year would render Andrews ineligible to receive mental health services from Arizona upon her release from prison. However, the record demonstrates that trial counsel investigated Andrews' continued eligibility for SMI services upon her release. Prior to sentencing, trial counsel flew to Arizona and interviewed Dobbs, Andrews' SMI case manager. During the interview, Dobbs actually represented to trial counsel that SMI services would continue upon Andrews' release from prison. Trial counsel accepted the answers provided by Andrews' case manager and thus had no reason to inform the Court that Andrews would not receive SMI services upon her release. The record establishes that trial counsel adequately investigated the issue and did not render deficient performance.

Additionally, the record establishes that Andrews cannot establish prejudice. Dobbs now represents that if Andrews serves a prison term of more than a year she will have to reapply for SMI services. However, Andrews' expert, Phillip Wise, estimates that Andrews will only serve approximately ten months in prison.[8] If Andrews serves less than a year in prison there is no risk that she will lose her SMI services upon release. There is no reasonable probability that the outcome of the proceeding would have been different if the Court had been made aware of the risk that Andrews would lose her SMI services if released more than a year after incarceration because under Andrews' current sentence that risk is only minimal given Andrews' potential for release in less than a year. Therefore, I will deny this ineffective assistance of counsel claim.

Andrews also argues that trial counsel provided ineffective assistance of counsel by failing to adequately investigate or inform the Court about the effect of incarceration on Andrews' oral surgeries. However, at sentencing, trial counsel submitted several documents from Andrews' surgical team recording her progress and explaining the procedure. Moreover, trial counsel argued for a downward departure or variance and a non-custodial sentence in light of Andrews' ongoing oral treatment. Counsel even argued that "if [Andrews] were to go into the BOP, the oral surgery would have been for nought because it wouldn't be completed within the BOP . . . ." *Id.* at 33:15-17. The Court rejected trial counsel's request for a non-custodial sentence on this basis and instead, opted to push back the date Andrews would begin serving her sentence in order to allow Andrews to complete her surgeries. Trial counsel spent considerable time and energy on the argument that Andrews' sentence should be reduced in light of her oral health. The record establishes that trial counsel adequately investigated the issue and did not render deficient performance.

---

[8] *See supra* note 7.

Additionally, the record establishes that Andrews cannot establish prejudice. Even if trial counsel had presented the additional evidence from Wise that it is unlikely the BOP will continue Andrews' oral surgeries and the evidence from Carpenter that the consequences of a delay in treatment are unknown, there is not a reasonable probability that the outcome would have been different. The Court concluded that "there must be a period of incarceration" because of the seriousness of the crime, which involved defrauding the Court and testifying dishonestly during a deposition under oath. Tr. 1-7-13 at 55-56. The Court considered Andrews' oral health and the importance of completing treatment, but also pointed out that Andrews began her oral surgeries after she had already pled guilty and was awaiting sentencing. After balancing the gravity of the crime and Andrews' oral health needs, the Court rejected a non-custodial sentence and opted for a delayed sentence to accommodate Andrews' treatment plan. It is very unlikely that the Court would have changed Andrews' sentence in light of the additional information attached to Andrews' petition, especially since the consequences of delaying the oral surgeries during Andrews' incarceration are unknown. The evidence still does not establish that if Andrews goes to prison her oral treatment will have been for nought. Therefore, I will deny this ineffective assistance of counsel claim.

## IV.  CONCLUSION

For the reasons set forth above, I will deny Andrews' Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. A certificate of appealability will not issue.[9]

```
                         _____s/Anita B. Brody_____
                         ANITA B. BRODY, J.
```

---

[9] In the Third Circuit, a certificate of appealability is granted only if the petitioner makes: "(1) a credible showing that the district court's procedural ruling was incorrect; and (2) a substantial showing that the underlying habeas petition alleges a deprivation of constitutional rights." *Morris v. Horn*, 187 F.3d 333, 340 (3d Cir. 1999). Andrews has not made such a showing.